**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

JOHN F. HOOKS,

        Plaintiff,

                                   Case No. 3:13-cv-891-J-34JBT

vs.

GEICO GENERAL INSURANCE
COMPANY, INC.,

        Defendant.

                                    /

## O R D E R

      **THIS CAUSE** is before the Court on Plaintiff's Motion for New Trial and Incorporated Memorandum of Law (Doc. 159; Motion), filed on September 8, 2015.  Defendant GEICO General Insurance Company (GEICO) filed a response in opposition to the Motion on September 25, 2015.  See GEICO's Response to Plaintiff's Motion for New Trial (Doc. 162; Response).  With leave of Court, see Order (Doc. 164), Plaintiff John F. Hooks filed a reply in support of his Motion on October 22, 2015.  See Plaintiff's Reply to GEICO's Response to Plaintiff's Motion for New Trial (Doc. 166; Reply).  In addition, on October 30, 2015, Hooks filed a Notice of Filing Supplemental Authority (Doc. 167).  Accordingly, this matter is ripe for review.

## I.   Background

      In this action, Hooks brings an insurance bad faith claim against his insurer, GEICO. See generally Complaint (Doc. 2).  Hooks was involved in a car accident with non-party Donald Hollenbeck on May 27, 2003.  At the time, Hooks' insurance policy with GEICO provided coverage for bodily injury in the amount of $25,000 per person or $50,000 per

occurrence.   After some negotiation with GEICO, Hollenbeck, represented by Jeffrey Bankston, brought a lawsuit against Hooks and on July 7, 2011, obtained a judgment in excess of Hooks' policy limits with GEICO.   Hooks filed the instant action asserting that GEICO breached its duty of good faith to Hooks in the handling of Hollenbeck's claim.   <u>See</u> Notice of Filing Joint Statement of the Nature of the Action (Doc. 101).   Following a five-day jury trial, <u>see</u> Minute Entries (Docs. 126, 129, 131, 139, 140), the jury returned a verdict in favor of GEICO.   <u>See</u> Verdict Form (Doc. 145), filed August 7, 2015.   In the instant Motion, Hooks requests a new trial pursuant to Rule 59(a), Federal Rules of Civil Procedure (Rule(s)).   <u>See</u> Motion at 1.   Hooks maintains that a new trial is warranted because counsel for GEICO made improper arguments, the verdict is not supported by the great weight of the evidence, and the Court made erroneous evidentiary rulings resulting in substantial prejudice to Hooks.   <u>See</u> <u>generally</u> <u>id.</u>

## II.   Applicable Law

Rule 59(a) provides that, "[t]he court may, on motion, grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court."   As a motion for a new trial is committed to the sound discretion of the trial court, a more lenient standard is applied than a motion for judgment as a matter of law.   <u>See</u> <u>United States ex rel. Weyerhaeuser Co. v. Bucon Constr. Co.</u>, 430 F.2d 420, 423 (5th Cir. 1970).[1]   Indeed, the trial court may grant a motion for a new trial if in the court's opinion "'the verdict is against the clear weight of the evidence or will result in a miscarriage of justice, even though there may be substantial evidence which

---

[1]      In <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

would prevent the direction of a verdict.'" Id. (citation omitted); see also Foster-Thompson v. Thompson, No. 8:04-cv-2128-T-EAJ, 2007 WL 1725198, at *2 (M.D. Fla. June 14, 2007) (recognizing that a new trial may be granted when "the verdict is against the weight of the evidence, or the damages are excessive, or substantial errors were made in the admission or rejection of evidence").  However, the court should give great deference to the jury's verdict and grant a new trial sparingly.  See U.S. Phillips Corp. v. Windmere Corp., No. 84-2508-CIV-MARCUS, 1991 WL 338258, at *2 (S.D. Fla. 1991).

**III.  Discussion**

### A. Improper Arguments of Counsel

In the Eleventh Circuit, "[t]he standard for determining whether a jury verdict should be set aside as a result of misconduct of counsel is whether the conduct was 'such as to impair gravely the calm and dispassionate consideration of the case by the jury.'" BankAtlantic v. Blythe Eastman Paine Webber, Inc., 955 F.2d 1467, 1474 (11th Cir. 1992) (quoting Allstate Ins. Co. v. James, 845 F.2d 315, 318 (11th Cir. 1988)).  In making this determination, courts "look to 'the entire argument, the context of the remarks, the objection raised, and the curative instruction . . . .'"  Danow v. Borack, 346 F. App'x 409, 411 (11th Cir. 2009) (quoting Allstate Ins. Co., 845 F.2d at 318-19).  Generally, "a timely objection is necessary to bring to the district court's attention errors in counsel's arguments."  Oxford Furniture Cos., Inc. v. Drexel Heritage Furnishings, Inc., 984 F.2d 1118, 1128 (11th Cir. 1993).  However, a new trial may be warranted "when the interests of substantial justice are at stake . . . ."  Id. (citing McWhorter v. City of Birmingham, 906 F.2d 674, 677 (11th Cir. 1990)).  Nonetheless, courts "'are reluctant to set aside a jury verdict because of an argument made by counsel during closing arguments.'"  Danow, 346 F. App'x at 411

(quoting <u>Vineyard v. Cnty. Of Murray, Ga.</u>, 990 F.2d 1207, 1214 (11th Cir. 1993)); <u>see</u> <u>also</u>

<u>Oxford</u>, 984 F.2d at 1128 ("[A] finding of plain error 'is seldom justified in reviewing

argument of counsel in a civil case.'" (citation omitted)).

Although Hooks now argues that several statements of opposing counsel during

closing arguments were improper, during the trial, Hooks objected to only one of those

statements.  Specifically, Hooks objected to defense counsel's statement that Bankston

had possession of Hollenbeck's medical records.  <u>See</u> Motion at 4; Transcript of Jury Trial

August 7, 2015 (Doc. 148; Aug. 7 Tr.) at 211 ("And you can look and see the dates on the

records.  There's no question Mr. Bankston had those records almost at the same time

they were created.").  Hooks immediately objected and the following exchange took place

in front of the jury:

| Hooks' Counsel: | "Objection, Your Honor. It's not something that's in evidence." |
| GEICO's Counsel: | "My recollection is it was, Your Honor, but I'll defer to the jury's recollection." |
| The Court: | "I'm going to direct the jury, as I did in my opening instructions, to rely on their recollection of the evidence." |

<u>See</u> Aug. 7 Tr. at 211.  As the Court noted, prior to closing arguments, the Court instructed

the jury to rely on their own recollection of the evidence, and not to construe the arguments

of counsel as evidence in the case.  <u>Id.</u> at 177.  The Court must presume that the jury

followed that instruction.  <u>See</u> <u>Sands v. Kawasaki Motors Corp. U.S.A.</u>, 513 F. App'x 847,

854 (11th Cir. 2013).  In its Response, GEICO points to the testimony of its expert witness

John Atkinson as the evidentiary basis for counsel's arguments.  <u>See</u> Transcript of Jury

Trial August 6, 2015 (Doc. 150; Aug. 6 Tr.) at 135-36 ("And all of us who work in this area

know the MRI films are on disc.  They were turned over to [Hollenbeck] and he actually

brought them to a physician for further consultation.  So they were available.").  Hooks

maintains that Atkinson's testimony does not support GEICO's argument because it was

specific to "MRI films," and GEICO referenced "medical records."  <u>See</u> Reply at 1 n.1.

However, to the extent Hooks disagreed with GEICO's characterization of the evidence,

he had the opportunity on rebuttal to present his interpretation of the evidence with respect

to what records existed when, and at what point those records were in Bankston's

possession.[2]  <u>See</u> <u>Favuzza v. Wilton Manors, Police Dep't</u>, 161 F. App'x 911, 913-14 (11th

Cir. 2006) (noting that plaintiff's attorney had the opportunity to rebut defendant's

characterization of the evidence).   Under the circumstances, in light of the Court's

instructions to the jury, the Court finds that GEICO's argument regarding the medical

records, even if improper, did not "'impair gravely the calm and dispassionate consideration

of the case by the jury.'"  <u>See</u> <u>Danow</u>, 346 F. App'x at 411-12 (quoting <u>Allstate Ins. Co.</u>,

845 F.2d at 318); <u>see</u> <u>also</u> <u>Hilger v. Velazquez</u>, 613 F. App'x 775, 777 (11th Cir. 2015);

<u>Sands</u>, 513 F. App'x at 854 ("Because the district court gave a curative instruction, and

because we presume the jury followed that instruction, the statements made by . . . counsel

in his closing argument were not 'clearly injurious.'").

---

[2]      In his Reply, Hooks also contends that GEICO's counsel held a stack of medical records in his hand and erroneously argued that those records were withheld from GEICO.  <u>See</u> Reply at 2; Aug. 7 Tr. at 212 ("This is the difference between what he cherrypicked to send and what was available to be sent.").  Hooks did not challenge this statement in his Motion and arguments raised for the first time in a reply brief should not be considered.  <u>See</u> <u>Bryant v. Warden, FCC Coleman-USP II</u>, No. 5:10-cv-444-Oc-29DNF, 2013 WL 1752700, at *1 n.1 (M.D. Fla. Apr. 23, 2013).  Regardless, the Court notes that because Hooks failed to object to counsel's actions at the time, <u>see</u> Aug. 7 Tr. at 212, there is no record of what medical records GEICO referenced.  The Court does not independently recall any impropriety, and absent a basis in the record for finding that GEICO misrepresented the evidence, Hooks' argument is unavailing.  Notably, had Hooks raised this objection at the time, the dates on the medical records could have been checked and any misrepresentation promptly corrected.

Hooks raises several additional challenges to words and phrases used by GEICO's counsel during closing argument.  Specifically, Hooks contends that counsel for GEICO improperly commented on the credibility of absent witnesses, encouraged the jury to draw negative inferences from the absence of a witness, referred to one of Hooks' arguments as "misinformation," and interjected his personal opinion through the use of derogatory remarks.  See Motion at 3-8.  Significantly, Hooks did not object to any of these statements during the trial.  Although the Court declines to discuss each challenged statement individually, the Court has reviewed the purportedly improper comments, weighed them in context, and considered the effect those comments had on the jury.  See BankAtlantic, 955 F.2d at 1474.  The Court is convinced that none of these statements, independently or cumulatively, rose to such a level that they impacted the jury's "calm and dispassionate" consideration of this case.[3]  See id.; Danow, 346 F. App'x at 411-12; see also Brough v.

---

[3]   The Court notes its disagreement with Hooks' characterization of some of these allegedly improper arguments.  For example, Hooks maintains that GEICO improperly urged the jury to draw a negative inference from the absence of a witness, specifically Jeffrey Bankston.  See Motion at 3-4.  Contrary to Hooks' characterization, GEICO did not assert that "the absence of Jeffrey Bankston should be considered by the jury as evidence that Bankston lied."  See id. at 4.  Rather, GEICO asked the jury to consider whether a statement in Bankston's letter was true by citing to expert testimony contradicting that statement.  See Aug. 7 Tr. at 220-21.  GEICO's reference to Bankston's absence, "Mr. Bankston didn't come in here to explain himself," was only to concede that "we don't know why he said that."  Id. at 220.  Even if improper, see United States v. Chapman, 435 F.2d 1245, 1247 (5th Cir. 1970), the comment was not so injurious as to impact the outcome of the trial.  Moreover, counsel's statement that Bankston, as a lawyer, had a duty to be honest was supported by evidence at trial.  See Aug. 7 Tr. at 72-73.

Hooks also contends that counsel for GEICO criticized Hooks for exercising "his right to a trial of this cause," and offered his personal opinion on the "underlying legitimacy of Hooks['] case."  See Motion at 7.  Hooks cites to counsel's statement that "I'm just saying he's accusing GEICO of something that is wrong.  He shouldn't be doing that."  Id. (citing Aug. 7 Tr. at 235).  However, Hooks places far greater import on the statement than can reasonably be drawn from its context.  In addressing Hooks' testimony that GEICO did not keep him informed, defense counsel cited to the evidence that he believed undermined that testimony, stating in pertinent part: "Yet Mr. Hooks, who contends GEICO didn't tell him anything, receives this letter and does nothing with it.  And I'm not trying to blame Mr. Hooks for this.  I'm just saying he's accusing GEICO of something that is wrong.  He shouldn't be doing that."  See Aug. 7 Tr. at 235.  The Court's understanding of counsel's comments in context is that: Hooks said GEICO did not keep him informed, this is evidence that GEICO did inform him, so Hooks is wrong and should not say that he was unaware of this information.  Even if improper, the comment was fleeting, and the Court is convinced that the jurors were not prejudiced or inflamed by these arguments, nor any of the other purportedly improper, yet unobjected-to, comments made during GEICO's closing arguments.

Imperial Sterling Ltd., 297 F.3d 1172, 1179-80 (11th Cir. 2002).  While the Court does not condone defense counsel's use of terms such as "nonsense," "desperate," "silly," "crazy," "red herring," and "misinformation" to describe Hooks' arguments, these comments were not so pronounced as to permeate the atmosphere of the trial.  See United States v. McKinley, 647 F. App'x 957, 964 (11th Cir. 2016) (finding comments were not improper where counsel referenced "smoke and mirrors" and "red herrings" during closing argument); United States v. De La Vega, 913 F.2d 861, 872 n.11 (11th Cir. 1990) ("The remarks made by the prosecutor, including allegations that defendant was 'tripping over his own lies' and that defense tactics were 'smoke screens', while improper, were not so pronounced and persistent as to permeate the entire atmosphere of the trial.") Irwin v. Singletary, 882 F. Supp. 1036, 1043-44 (M.D. Fla. 1995).  The Court's impression of the comments as innocuous is supported by the fact that Hooks' counsel, while now claiming substantial prejudice, made no attempt to object at the time.  See Oxford Furniture Co., 984 F.2d at 1129 (finding no plain error in the arguments of counsel in part because defendants "while now claiming severe prejudice because of the argument, made no attempt to object to the arguments when they were made").  Notably, the challenged statements did not refer to evidence that the Court had ruled inadmissible, nor did defense counsel misrepresent the law or make inflammatory comments about Hooks personally. Cf. McWhorter, 906 F.2d at 677-78 ("Trial counsel's closing argument was in direct violation of the district court's ruling and was thus highly improper."); Wilson v. NHB Indus., Inc., 219 F. App'x 851, 853-54 (11th Cir. 2007) (finding new trial warranted where counsel's comments "constituted a misstatement of the law which went directly to the very issues contested in the case"); BankAtlantic, 955 F.2d at 1474 (summarizing cases where new

trial was warranted due to counsel's improper comments).  Moreover, to the extent Hooks

disagreed with GEICO's characterization of the evidence and suggested inferences, Hooks

had an opportunity after GEICO's argument to present rebuttal.   Thus, after careful

consideration, the Court is convinced that counsel's comments did not undermine the

integrity of the proceedings and the interests of justice do not support granting a new trial

on this basis.

### B.  Weight of the Evidence

When a motion for a new trial is based on the weight of the evidence, the

> court should grant [the motion] when "the verdict is against the clear weight
> of the evidence or will result in a miscarriage of justice, even though there
> may be substantial evidence which would prevent the direction of a verdict
> . . . .  Because it is critical that a judge does not merely substitute his
> judgment for that of the jury, new trials should not be granted on evidentiary
> grounds unless, at a minimum, the verdict is against the great – not merely
> the greater – weight of the evidence."

Ash v. Tyson Foods, Inc., 190 F. App'x 924, 926 (11th Cir. 2006) (quoting Lipphardt v.

Durango Steakhouse of Brandon, Inc., 267 F.3d 1183, 1186 (11th Cir. 2001)); see also

Williams v. City of Valdosta, 689 F.2d 964, 973 (11th Cir. 1982).  Unlike in considering a

motion for judgment as a matter of law, the Court is permitted to reweigh the evidence in

determining whether to grant a new trial.  Williams, 689 F.2d at 973; Popham v. City of

Kennesaw, 820 F.2d 1570, 1575 (11th Cir. 1987).  However, when "'there is no great weight

of the evidence in any direction,'" it would be improper to grant a new trial based on the

sufficiency of the evidence.  See Williams, 689 F.2d at 976; see also Weese v. Schukman,

98 F.3d 542, 550 (10th Cir. 1996) (finding that a new trial is warranted based on the weight

of the evidence when "the verdict is 'clearly, decidedly, or overwhelmingly' against the

weight of the evidence").  Additionally, "the district judge should not substitute [her] own

credibility choices and inferences for the reasonable credibility choices and inferences made by the jury." Walls v. Button Gwinnett Bancorp, Inc., 1 F.3d 1198, 1201 (11th Cir. 1993) (internal quotation marks omitted). Lastly, "when the trial involves simple issues, highly disputed facts, and there is an absence of 'pernicious occurrences,' trial courts should be considerably less inclined to disturb a jury verdict." See Williams, 689 F.2d at 974; Hardin v. Hayes, 52 F.3d 934, 938 (11th Cir. 1995). Yet, the court has more freedom to scrutinize the verdict, when the case involves "complex issues, facts not highly disputed, and events arguably marred by error." See Williams, 689 F.2d at 974.

Here, the jury was asked to determine whether GEICO failed to settle Hollenbeck's claim against Hooks "when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward [Hooks] and with due regard for his interests." See Court's Final Jury Instructions (Doc. 144) at 12. The jury was advised that an insurer acting in good faith "must investigate the facts, give fair consideration to a settlement offer that is not unreasonable under the facts and settle, if possible, where a reasonably prudent person, faced with the prospect of paying a total recovery, would do so." Id. The Court informed the jury that to prevail on his claim, Hooks "must establish that the insurer's failure to act in good faith caused the failure to achieve a settlement." Id. at 13-14. In addition, the jury considered GEICO's affirmative defenses and determined whether GEICO satisfied its burden to "show there was no realistic possibility of settlement within policy limits and that the insured was without the ability to contribute to whatever settlement figure that the parties could have reached." Id. at 17.

Upon review of the evidence adduced at trial, which the Court does not view in the light most favorable to GEICO, the Court concludes that the jury's verdict is not against the

great weight of the evidence and does not result in a miscarriage of justice.  In his Motion, Hooks presents a one-sided version of the evidence drawing all inferences in his favor and questioning the credibility of the witnesses whose testimony differed from his own.  See Motion at 10-17.   However, Hooks fails to acknowledge that the reasonableness of GEICO's actions was greatly contested at trial, and the jury may have justifiably resolved the credibility questions against him.[4]  See Marlite, Inc. v. Eckenrod, 537 F. App'x 815, 817 (11th Cir. 2013) (affirming denial of motion for new trial in light of "conflicting evidence and the opposing inferences that could be drawn from it").  Indeed, the jury was presented with testimony from the adjusters Daniel Latimer and Carlos Orozco describing the steps they took to evaluate the claim and advise Hooks, as well as their reasoning for declining Bankston's initial settlement demands.  Julia Miller, whom GEICO hired to represent Hooks after Hollenbeck filed suit, also testified as to her investigation of the claim, the basis for her decision to recommend a policy limits offer, and her communications with Hooks.  The jury then heard qualified experts disagree about the reasonableness of GEICO's actions in handling the claim and pursuing settlement opportunities.

Based on this evidence, the jury evidently found that GEICO's requests to obtain additional medical records prior to settlement were reasonable and in good faith, and either accepted that Miller properly advised Hooks of the settlement offers above the policy limits, or concluded that Hooks could not have contributed the additional funds necessary to

---

[4]     In the Motion, Hooks attempts to undermine the credibility of witness Julia Miller by presenting additional evidence not offered at trial.  See Motion at 16-17, Ex 2.  Hooks cites no authority permitting the Court to consider this evidence and the Court declines to do so.  The Court acknowledges that counsel for Hooks seeks to address Miller's antagonistic comments about him during the trial, but if counsel wished to correct the misimpression given the jury by those comments, he should have objected to them at that time.  See Transcript of Jury Trial August 4, 2015 (Doc. 155; Aug. 4 Tr.) at 76-77, 100.  Regardless, to the extent counsel argues that Miller's comments "negatively influenced the jury" against him, see Motion, Ex. 2 ¶ 7, based on the Court's own recollection of Miller's testimony, it is likely that her hostile demeanor reflected more poorly on her.

achieve settlement regardless.   Indeed, even accepting Hooks' contention that GEICO failed to keep him as informed as it should have, the great weight of the evidence does not mandate a finding that these omissions were the result of bad faith or caused the failure to settle Hollenbeck's claim.   While the circumstances culminating in this trial are no doubt unfortunate,

> [i]t is the jury, not the court, which is the fact-finding body. It weighs the contradictory evidence and inferences, judges the credibility of witnesses, receives expert instructions, and draws the ultimate conclusion as to the facts. The very essence of its function is to select from among conflicting inferences and conclusions that which it considers most reasonable.

See Tennant v. Peoria & P.U. Ry. Co., 321 U.S. 29, 35 (1944).   Having presided over the trial and heard all of the evidence, the Court is satisfied that the jury's credibility determinations, inferences, and conclusions, although unfortunate for Mr. Hooks, do not result in a miscarriage of justice and should not be disturbed.

### C. Evidentiary Rulings

Pursuant to Rule 61, the Court must "disregard all errors and defects that do not affect any party's substantial rights."   As such, "[u]nless justice requires otherwise, no error in admitting or excluding evidence—or any other error by the court or a party—is ground for granting a new trial . . . ."   See Rule 61.   This Rule is consistent with Eleventh Circuit precedent that to obtain a new trial on the basis of erroneous evidentiary rulings, the aggrieved party must show that the errors affected his "substantial rights."   See Haygood v. Auto-Owners Ins. Co., 995 F.2d 1512, 1515 (11th Cir. 1993); Ad-Vantage Tel. Directory Consultants, Inc. v. GTE Directories Corp., 37 F.3d 1460, 1465 (11th Cir. 1994); see also Batchelor v. GEICO Cas. Co., 142 F. Supp. 3d 1220, 1241 (M.D. Fla. 2015).   Indeed, "'[e]rror in the admission or exclusion of evidence is harmless if it does not affect the

11

substantial rights of the parties.'" Haygood, 995 F.2d at 1515 (quoting Perry v. State Farm Fire & Cas. Co., 734 F.2d 1441, 1444 (11th Cir. 1984)).  Factors relevant to the question of whether a party's substantial rights were affected are: "the number of errors, the closeness of the factual disputes, the prejudicial effect of the evidence, the instructions given, and whether counsel intentionally elicited evidence and focused on it during the trial."  See Ad-Vantage Tel. Directory Consultants, Inc., 37 F.3d at 1465.  "To show that an evidentiary ruling affected [his] substantial rights, the complaining party 'bears the burden of proving that the error probably had a substantial influence on the jury's verdict.'"  See Marlite, Inc., 537 F. App'x at 817 (quoting Proctor v. Fluor Enters., Inc., 494 F.3d 1337, 1353 (11th Cir. 2007)).

Hooks contends that the Court erred in excluding portions of the deposition testimony given by Latimer and Orozco.  Specifically, Hooks argues that the Court erroneously excluded testimony in which these adjusters "agreed with duties that they owed to the insured in the handling of claims."  See Motion at 17.  Hooks maintains that the jury should have been able to consider "whether the adjuster knew the duties and responsibilities he or she owed to the insured and whether the adjuster complied with those duties and responsibilities."  Id. at 19.  Hooks cites to excluded testimony regarding the insurance company's fiduciary duty to the insured, as well as its duties to investigate the insured's liability, keep the insured informed regarding the handling of the claim, advise the insured of settlement opportunities, advise the insured of the probable outcome of litigation, warn of the possibility of an excess judgment, advise of steps to take to avoid an excess judgment, and adopt and implement standards for handling claims.  See Motion, Ex. 4.  According to Hooks, "[t]here was ample evidence presented to the jury showing that the

adjusters did not comply with many of these duties," and such evidence in combination with testimony that the adjusters knew of those duties would demonstrate "something more than negligence," supporting a finding of bad faith.  <u>Id.</u> at 19.  GEICO responds that the adjusters' understanding of their duties is irrelevant to this case, and moreover, that the evidence demonstrated that the adjusters complied with their duties.  <u>See</u> Response at 19.

    During the trial, the Court sustained GEICO's objections to portions of the adjusters' deposition testimony finding that in these challenged sections the adjusters expressed legal opinions on the parameters of Florida bad-faith law.  <u>See</u> Transcript of Jury Trial August 3, 2015 (Doc. 154; Aug. 3 Tr.) at 199-201; Transcript of Final Pretrial Conference July 13, 2015 (Doc. 96; FPC Tr.) at 36-37, 39-40.  The Court explained that "to the extent that the GEICO adjusters have opinions of the law that's consistent with what the Court says, then any additional testimony by them is potentially confusing or misleading . . . ." <u>See</u> Aug. 3 Tr. at 201.  In addition, where the testimony described more specific requirements than that set forth in the case law, and suggested that the adjuster had duties greater than what the law requires, the Court found that such testimony would be "confusing and prejudicial."  <u>Id.</u> at 203-04.  While the Court posited that evidence regarding an adjuster's knowledge of his duties may not always be inadmissible, because the questions at issue were phrased in a way that elicited legal conclusions, the Court concluded that this testimony was improper.  <u>Id.</u> at 210.  Notably, Hooks maintained during trial that this testimony was necessary in light of GEICO's request for "a jury instruction stating that bad faith amounts to conscious disregard for the rights of the insured."  <u>See</u> Supplemental Memorandum (Doc. 147), filed August 3, 2015.  Although Hooks opposed this instruction, he nonetheless sought to use this testimony to show that Latimer "either

intentionally did not comply with the duty or failed to comply with the duty in conscious disregard for the rights of Mr. Hooks." Id.  However, the Court rejected the conscious disregard instruction, see Transcript of Jury Trial August 4, 2015 (Doc. 155; Aug. 4 Tr.) at 4, and did not instruct the jury that Hooks must show conscious disregard or intentional conduct on the part of the adjusters in order to prove bad faith, see Final Jury Instructions (Doc. 144) at 12-14.  Upon review of the testimony at issue and the challenged rulings, the Court remains convinced that the testimony was properly excluded because it consisted of improper legal opinions, and its probative value did not outweigh the potential for prejudice and confusion.

However, even if the Court's ruling was in error, Hooks fails to demonstrate that exclusion of this testimony affected his substantial rights.  Preliminary, the Court notes that the jury heard substantial testimony from two experts describing the contours of the legal duties that an insurer owes to its insured, such that there is no question the jury understood GEICO's obligations to Hooks in this context.  Moreover, the jury heard testimony from the adjusters themselves regarding their understanding of their duties to GEICO's insured and the steps they took to fulfill those obligations.  Specifically, Hooks presented testimony from Latimer acknowledging his duty to investigate claims, evaluate the damage portion of a claim, and advise the insured of the status of the claim.  See Aug. 4 Tr. at 28, 41.  In addition, the jury heard Latimer acknowledge that he had read the Florida Supreme Court's decision in Boston Old Colony,[5] and had an obligation to keep the insured informed of his potential exposure on the claim.  Id. at 32.  Latimer also testified about his understanding of the phrases "insurance bad faith," and "fiduciary duty."  Id. at 28.  In addition, at trial

---

[5]   Boston Old Colony Ins. Co. v. Gutierrez, 386 So. 2d 783, 785 (Fla. 1980) (outlining an insurer's good faith duties to an insured).

Orozco testified by deposition about the steps he took to evaluate the claim, obtain additional records, and advise Hooks regarding the status of the matter.  <u>See</u> Aug. 4 Tr. at 188-89, 209-10, 214-15, 218, 228-29, 234-35.  Both Latimer and Orozco testified that they received training from GEICO regarding their duties as adjusters.  <u>See</u> <u>id.</u> at 19-20, 187.  Significantly, the jury never heard any testimony or argument suggesting that the adjusters were unaware of their obligations to the insured.  Rather, the evidence and the arguments of counsel framed the bad faith question as dependent on whether the adjusters properly evaluated the claim, advised Hooks regarding his potential exposure, informed Hooks of the settlement offers, and acted reasonably in failing to settle the claim.  Counsel for GEICO never argued that the jury should find in its favor because any errors on the part of an adjuster were mere negligence resulting from the adjuster's lack of awareness of his legal responsibilities.  In light of the foregoing, the Court finds that even if its ruling was in error, Hooks fails to satisfy his burden of showing that the error "'probably had a substantial influence on the jury's verdict.'"  <u>See</u> <u>Proctor</u>, 494 F.3d at 1352 (quoting <u>United States v. Stephens</u>, 365 F.3d 967, 977 (11th Cir. 2004)).

Last, Hooks contends that the Court erred in admitting the testimony of GEICO's corporate representative, Scott Jones.  In the Motion, Hooks argues that GEICO failed to list a corporate representative, either specifically or generally, as an individual likely to have discoverable information in its Rule 26 disclosures.  <u>See</u> Motion at 21, Ex. 5.  Hooks maintains that he was prejudiced by GEICO's failure to disclose a corporate representative as someone likely to have discoverable information because he was deprived of the opportunity to conduct discovery or take a deposition related to the corporate representative, and thus had "no idea what subject matters to which the corporate

representative may testify." <u>Id.</u> at 22.  GEICO maintains that a party to an action is a "presumed witness," and a corporation can only speak through its representative, such that its failure to list a corporate representative on its Rule 26 disclosures was not improper. <u>See</u> Response at 20.  Regardless, GEICO contends that Hooks failed to timely object to its inclusion of a corporate representative on the witness list, and Jones' testimony did not substantially prejudice Hooks.  <u>Id.</u>

Hooks is correct that GEICO failed to disclose a corporate representative, either generally or specifically, in its Rule 26(a)(1) initial disclosures.  <u>See</u> Motion, Ex. 5. Nonetheless, GEICO did disclose the assistance of a corporate representative, albeit a different person, in completing GEICO's interrogatory responses, <u>see id.</u>, Ex. 9, and listed "GEICO Corporate Representative" on Defendant's Trial Witness List (Doc. 76-4) filed with the Joint Pretrial Statement (Doc. 76) on July 7, 2015.  Despite GEICO's disclosure of its intent to call a corporate representative, Hooks did not raise an objection to this witness at the final pretrial conference.  Rather, Hooks waited until the middle of trial to object to the testimony of the corporate representative.  <u>See</u> Transcript of Jury Trial August 5, 2015 (Doc. 156; Aug. 5 Tr.) at 251-54.  GEICO insisted that its failure to name a corporate representative in its initial disclosures was not improper because "GEICO is entitled to be represented at this trial by a representative, and that representative, if properly designated, can testify."  <u>Id.</u> at 253.  According to GEICO, Hooks never sought a Rule 30(b)(6) deposition and having never asked GEICO to designate a representative, cannot complain that he did not know who the representative would be.  <u>Id.</u>  When the Court expressed uncertainty over whether the identity of the corporate representative had to be disclosed, counsel for Hooks interjected: "Judge, we just lodge the objection for the record.  But if,

16

depending on what he testifies to, we may need a short break to figure out how he fits in this whole scheme of the case." Id. at 253.  When GEICO called Jones to the stand on August 7, 2015, Hooks renewed his objection.  See Aug. 7 Tr. at 91.

Generally, Jones' testimony pertained to the ClaimsIQ computer program, GEICO's policies on evaluating claims using ClaimsIQ, the purpose of "reserve" funds, and the meaning of various entries on the Activity Log.  See generally id. at 91-118.  Jones also testified about GEICO's profit-sharing system.  Id. at 121-22.  Notably, prior to allowing Jones to testify on the topic of profit-sharing, the Court gave Hooks an opportunity to object because, unlike the prior topics, it was unclear to the Court whether Hooks could have reasonably anticipated this subject from the pretrial disclosures.  Id. at 119-20.  However, counsel for Hooks stated that he had "no problem" with GEICO inquiring as to profit-sharing.  Id. at 120.  At the conclusion of direct examination, the Court asked Hooks whether he could "identify anything in Mr. Jones' testimony that [he] could not have anticipated based on the Rule 26 disclosure," to which Hooks responded in the negative.  Id. at 122.  Significantly, Hooks did not ask for any additional time to prepare his cross-examination of Jones.

During trial, the Court overruled Hooks' objection to the corporate representative testifying because:

> One, a corporate representative was always listed on the witness list, and there was no objection, no timely objections at pretrial.

> And second, . . . I don't think that Rule 26 requires the specific—the disclosure of the name of the specific person that is going to testify as a corporate representative.  What is required is that the facts and the subject matter are disclosed.

> And this witness has been testifying up to now about the corporate policies and the documents that have been—and there's no question that that's not

unfair surprise.  All of that is stuff that plaintiff's could have anticipated, because those questions could have been asked of any number of people that were on the witness list, Chad Joel and there were several others.

And so I don't think there's—up to now, I don't think there's any unfair surprise, and I think that this witness is fine.

See id. at 119.  Upon further review, the Court acknowledges that there is authority on both sides of this issue.  Compare Moore v. Computer Assocs. Int'l, Inc., 653 F. Supp. 2d 955, 959-60 (D. Ariz. Sept. 2, 2009) (agreeing with defendant that witness was a corporate witness such that Rule 26 disclosure was not required); Garrett v. Trans Union, L.L.C., No. 2:04-CV-00582, 2006 WL 2850499, at *7 (S.D. Ohio Sept. 29, 2006) (allowing affidavit of corporate representative on summary judgment despite failure to previously identify the witness); Medpace, Inc. v. Biothera, Inc., No. 1:12-cv-179, 2013 WL 6158181, at *2-3 (S.D. Ohio Nov. 25, 2013) (naming corporate entities in supplemental disclosures, rather than individuals, did not violate Rule 26); with GEICO Cas. Co. v. Beauford, No. 8:05-cv-697-T-24EAJ, 2007 WL 2412953, at *5 (M.D. Fla. Aug. 21, 2007) (finding that "naming a general category such as 'corporate representative' is not a sufficient disclosure under Rule 26," and granting motion in limine "to the extent that GEICO has not disclosed the specific name of the witness that will testify as its corporate representative"); Rogers v. Bank of Am., N.A., No. 13-1333-CM-TJJ 2014 WL 4681031, at *5-7 (D. Kan. Sept. 19, 2014) ("[T]he Court finds that Defendant's mere identification of individuals not by name but by a generic label that could apply to a number of its employees, such as Defendant's 'corporate representative' or 'records custodian,' is not sufficient to satisfy its initial disclosure obligations under Rule 26(a)(1)(A)(i).").

Regardless, even if GEICO failed to properly disclose a corporate representative, Rule 37(c)(1) provides that a party may use an undisclosed witness at trial if "the failure

was substantially justified or is harmless." See Rule 37(c)(1).[6]  Jones testified with regard

to corporate policies and documents that were plainly at issue during discovery and could

have been addressed by any number of the GEICO employees on the witness list.  Indeed,

counsel for Hooks conceded that there was nothing in Jones' testimony that he could not

have anticipated.  While Rule 26 may technically require GEICO to disclose a corporate

representative in its Rule 26 disclosures, because GEICO is a party to this case, it is difficult

to accept that Hooks was surprised that a corporate representative had relevant testimony

regarding GEICO's policies and practices, and the meaning of the internal documents at

issue in this case. See Rule 37(c)(1), advisory comm. notes 1993 amendments (explaining

that nondisclosure is harmless where it involved the inadvertent omission of "the name of

a potential witness known to all parties").  In addition, GEICO's failure to disclose itself as

a witness did not deprive Hooks of the opportunity to seek a Rule 30(b)(6) deposition of a

GEICO corporate representative during discovery had he wanted to do so.  See Moore,

653 F. Supp. 2d at 960.  GEICO's failure appears to be the result of a mistaken assumption

that as a party to this case, it is presumed that its corporate representative has relevant

testimony, and there has been no suggestion that GEICO's failure to disclose was the

result of gamesmanship or lack of diligence.  Moreover, any prejudice to Hooks was

mitigated by the fact that GEICO disclosed its intention to call a corporate representative

---

[6]      In determining whether a failure to disclose is substantially justified or harmless, courts consider the following factors:

> "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose."

See Two Men & A Truck Int'l, Inc. v. Residential & Commercial Transp. Co., LLC, No. 4:08cv67-WS/WCS, 2008 WL 5235115, at *2 (N.D. Fla. Oct. 20, 2008) (quoting S. States Rack & Fixture, Inc. v. Sherwin-Williams Co., 318 F.3d 592, 597 (4th Cir. 2003)).

in its pretrial witness list, and it was Hooks' failure to object at that time that precluded any opportunity to cure the surprise prior to trial.[7]

Given that the failure to disclose the corporate representative was harmless under the circumstances of this case, the Court finds no error in its decision to allow Jones to testify. Nonetheless, even if the Court erred, Hooks fails to show that this error "affected a substantial right, i.e., . . . that the error 'probably had a substantial influence on the jury's verdict.'" See U.S. Specialty Ins. Co. v. Burd, 478 F. App'x 653, 657 (11th Cir. 2012) (quoting Proctor, 494 F.3d at 1352). On this critical issue, Hooks offers only the unsupported conclusion that "Hooks was substantially prejudiced by GEICO's failure to disclose." See Motion at 24. This conclusory assertion is entirely insufficient to carry his burden on a motion for new trial. Hooks fails to explain how Jones' generalized testimony as to GEICO's policies and procedures substantially influenced the jury's decision in light of the more specific testimony regarding the actions or omissions of the individuals involved in adjusting the claim against Hooks and the assessments of the experts with respect to those actions. Thus, even if the Court erred in permitting Jones to testify, the Court finds with "fair assurance" that the jury's verdict was not substantially swayed by this testimony. See Ad-Vantage, 37 F.3d at 1465. Accordingly, it is

---

[7]   Hooks maintains that he was prejudiced by the lack of disclosure because he would have been able to impeach Jones at trial as to the designation of GEICO's Lakeland office as a "profit center" and whether the use of the ClaimsIQ computer program is mandatory. See Motion at 23. The Court has reviewed Hooks' impeachment evidence on these minor issues and finds it unlikely to have substantially undermined Jones' credibility in that the purported impeachment evidence does not directly contradict Jones' testimony. See Motion, Exs. 6-8; Aug. 7 Tr. at 145-50, 151-52.

**ORDERED**:

Plaintiff's Motion for New Trial and Incorporated Memorandum of Law (Doc. 159)

is **DENIED**.

**DONE AND ORDERED** in Jacksonville, Florida, this 28th day of September, 2016.

**MARCIA MORALES HOWARD**
United States District Judge

lc11
Copies to:

Counsel of Record
Pro Se Parties

21